Good morning. May it please the Court, my name is Donald Reed. I represent Fariborz and Melike Babaee, the appellants and Chapter 7 debtors in this bankruptcy case. The Supreme Court has long and often stated that the primary purpose of the Bankruptcy Code is to give a fresh start to the honest but unfortunate debtor. Exemptions are a critical component of the fresh start and they are liberally construed. Exemptions allow the debtors to maintain a minimum amount of property so that they are not destitute. What's the dollar value at stake here? What's riding on this argument? There's some amount left over that your client may, I know it's unresolved, but maybe we'll see $40,000 I saw in the record. My clients have an exemption for $175,000. Right. So that's the most of what you could get out of this? Yeah, well it's based on demographic criteria so they're entitled to the full amount. But then I understood from the, and again it hasn't been fully sorted out yet, but your $40,000, $45,000, is that right? Probably, well it depends. If the trustee's position based on these assigned lien rights, the trustee's position down below is going to be that those assigned lien rights are superior to the debtor's exemption. And so the trustee is able to administer the remaining amount secured by those liens. Right, but there's $200,000 plus, right, that still hasn't been distributed. I understood that even once unsecured creditors get something and maybe the trustee gets something, there's still going to be maybe something left over for your client. I'm trying to figure out what's a, $150,000 is the max, but if you're already possibly seeing $40,000 or $45,000, we're really talking about $100,000 here? No, well I think it's going to be all or nothing, to be frank. It's whether these lien assignments are valid. If the lien assignments are valid, then the trustee is going to administer the rest of the property, the remainder of the funds to pay administrative claims and then general unsecured creditors. So where did the $40,000 come from? I had the impression that the trustee might compromise a bit and allow your client to receive $40,000. Well the trustee will first pay the administrative expenses, so that's all their legal fees and the trustee's statutory fee and the like. And then the remainder is going to be paid to general unsecured clients. So is the trustee taking a cut in his own fees in order for your client to get some money? No, I don't believe so. But that hasn't arisen yet, really. I mean if there hadn't been a, if the properties hadn't gone into the bankruptcy and just been foreclosed upon, your clients would have nothing, right? That's correct, yeah. It's hard to see. I mean the bankruptcy process was fairly advantageous. You got the debts extinguished. Your clients may see some portion of this homestead exemption, but for the bankruptcy, this whole thing would have been in foreclosure, right? Well not necessarily. I don't believe the property was in foreclosure. I would note that none of the lenders during this two-year bankruptcy case ever sought relief from stay to foreclose. Outside of bankruptcy, my clients would have had the opportunity to do a loan modification with the secure creditors or they could have tried to refi the property or even done their own short sale and net some of the proceeds. And then by liquidating this also, outside of bankruptcy, there's certain protections as well. There's a certain procedure that secure creditors must go through to foreclose a property, upon a property. It takes about, you know, several months. Here the bankruptcy court approved the sale, forcefully evicted our, my clients from the home and essentially denied them an opportunity to do any of that. Follow this for me. It's my understanding that when a trustee takes control of an estate filed by a Chapter 7, that's number one. The trustee takes control. The debtor no longer has control, right? Number two, you would concede I think that property sales in this case cannot be undone. What's done in that respect is done, right? Number three, it's the fiduciary duty of the trustee to maximize assets and pay off creditors, which is what he tried to do here, right? Correct. Okay. Number four, and he did that through the compromise order here, which allowed through the secured creditors giving up some, allowed the unsecured creditors to get some money and perhaps your client some money and the trustee get appropriate fees, correct? And isn't that a risk that a debtor takes when he or she files bankruptcy, that the trustee has control, that the creditors are going to get paid to the extent they can, and there's a risk that you won't get, in this case, a homestead exemption? I think there's certainly a risk that when they file a bankruptcy case that a trustee will administer property that has value for the benefit of creditors, but they did not take the, here the bankruptcy judge, the code does not give the bankruptcy judge authority to approve these type of agreements. There's nothing in the bankruptcy code that authorizes the trustee to do this sort of claims trading where they accept, assign lien rights for the sole purpose of really denying the debtors their statutory right of exemption. That's not the sole purpose here. The sole purpose was to get the creditors paid and perhaps your client's receiving some money. But the mechanism is the secured creditors agree to a discounted payoff, but then this whole construct of assigning lien rights is for the sole purpose that the debtors do not get payment on their statutory right of exemption. It deviates from the distribution of the bankruptcy code, and the Supreme Court has twice held that that exceeds the bankruptcy court's authority to do so. So are you saying the compromise order is faulty? I think the lien assignments are faulty, so I'm specifically attacking the bankruptcy court's approval of those lien assignments. Right, but I mean, I guess the question is then how is there redressability here, right? Because if we unwind all of this, the outstanding lien rights are worth more, right? I don't see what your client has to gain there. Well, I don't think you have to reverse the agreements in total. Number one, these contract has several distinct objects. One is lawful, one is unlawful, that the contract is void as to the unlawful provisions. Right, but we can't, I mean, first of all, I don't know that these severability point was raised below, but even if it were, it seems then we're approving like an incomplete deal. I mean, the secured creditors took a haircut on their lien rights, and the trustee was then able to go forward with that. I don't see how, you can't take that haircut and then keep the rest of the deal as you want. The secured creditors receive the full benefit of the bargain. I mean, this is a dispute between the trustee and the debtors. I mean, the secured creditors got everything that they wanted. From the trustee's standpoint, I mean, we'll hear from the trustee, but I don't see how this wouldn't undermine the entire purpose of the agreement. Well, maybe, yeah, from the trustee's perspective, and that's, I don't think that it may undermine it, but that's, they're a party to this appeal. I mean, that's kind of what we're arguing about. I don't think the trustee can say, gosh, I wouldn't have entered into this because, you know, to reverse it on appeal would negate the benefit to the estate. The trustee, by the way, the trustee is holding $225,000 approximately. The debtors have a homestead exemption against those funds for $175,000, so there would still be about $50,000 left to the estate, even if those lien assignment provisions were to be reversed. You're not challenging payment to the trustee for appropriate fees. That's not part of your argument. Am I right? No, my argument is solely aimed at those, the validity of those lien assignments, which are specifically structured to deny payment on the debtors' homestead exemption. And it's my understanding these compromise and sale agreements are not, it's not unique. Other courts have approved them in other cases. Yeah, but there's a split body of case law as to the propriety of these. Correct. And isn't much of that case law attacking it where trustees perhaps are being overcompensated to the detriment of the debtor? No, I mean, there's some cases concerning that. There's a general prohibition against trustees administering over-encumbered properties solely to gin up, you know, administrative window dressing to justify all this. That's one area, but there is a split. The split of case law really comes down to how do you characterize these agreements, right? There's just lien carve-outs in general. There's essentially two types. There's one where the courts construe these as incentive payments, where the secure creditor is actually paying the estate, and then there's cases like it where it's here where the secure creditor is actually assigning lien rights to the estate. Right, but to even get to any of this, we would have to agree with you that we can basically partially invalidate these agreements. Yeah, and I think if you just look at the plain language of the agreements and, you know, the civil code, I think it clearly says that they are. You know, you can sever out the unlawful provisions. I mean, to rule otherwise would essentially make these agreements unreviewable because the only party in interest that would challenge these agreements are the debtors who are being forcefully evicted from their home and without any payment of their exemption. So they get kicked out of their home, then they don't have any funds for a security deposit for a new rental or a down payment on a new house. I mean, they're very literally kicked to the curb and left to their own devices to find new housing. Haven't you waived the severability argument in the agreements because you didn't raise it below? Isn't it waived? I don't believe it was waived. Why not? Well, that was something that the BAP really raised that issue at oral argument, really, was really what – I did argue that those secure creditors receive the full benefit of their bargain down below and that, you know, the secure creditors aren't able to basically dictate who gets the remaining proceeds. The bankruptcy code controls that, so – and the proceeds have to be distributed pursuant to the provisions of the bankruptcy code, and the bankruptcy code gives my clients a homestead exemption and that needs to be honored. Do you want to save some time for rebuttal? Yes, please. Mr. Goodrich, good morning. Good morning, David Goodrich, Golden Goodrich, LLP. On behalf of the APOE, Richard A. Marshak, Chapter 7 trustee. Your honors probably are aware the standard for standing has slightly changed, perhaps, since the briefing of this appeal. There was a decision that recently came out called East Coast Foods, Inc., that this court issued. It's 66-F-1214-2023, which discusses a Supreme Court decision in re CISC, S-I-S-K, that's at 962-F-3-D-1133, pinpoint site 1141. It's a Ninth Circuit decision, 2020. I'm sorry, that – I think Anyway, the point is that the standard that was in bankruptcy before the East Coast Foods decision was issued was something called the – sorry. It was the aggrieved standard, prudential standing, which in bankruptcy, because bankruptcy is a conglomerate of a bunch of different disputes. It's like many civil lawsuits, multiple civil lawsuits, and the standard goes back to the Bankruptcy Act, which preceded the Bankruptcy Code. In CISC, the Supreme Court noticed that in bankruptcy appeals, the standing has changed to this aggrieved party, where there needs to be a pecuniary interest in the outcome, and the reason for that is that with all the different parties, the stakeholders, the creditors involved with bankruptcy, the courts didn't want to hold up the resolution of the bankruptcy case in distribution of creditors. But the Supreme Court pushed back on that in 2020 and said, no, it's Article III standing, which is slightly different. I don't know if it's worse or better, frankly, for the trustee, but in that decision, the court reverts back to Lujan, which is – it's also a Supreme Court decision. I lost the site. So where are you going with this, that we need to apply Article III standing? I just want to make sure that the court was aware of this, and I think the court has actually noted it, but I think in the end, the trustee – the debtors, rather, lack standing in either scenario, under either standard, and the reason is, is what is at issue is the compromise order, and what the debtors have argued and what this court has picked up on is that if the court reverses the compromise order, then that will leave money available for the homestead exemption, and the reason that's faulty is for a variety of reasons. First of all, what the debtors will argue is that the contract is illegal in part, but there's nothing in the contract that has been cited to that's illegal. What the debtors believe is illegal is the trustee's agreement to receive a partial interest and a lien, and a security interest, and in exchange, the trustee liquidated the properties. That was a conditional assignment to the trustee. There's nothing illegal about it. In fact, on a daily basis, mortgages are transferred back and forth between different mortgage holders, sometimes private equity and so forth, and I'm not aware of any decision that says that parties cannot transfer property back and forth, including mortgages. Well, I mean, that's sort of a merits argument, but if your friend on the other side wants to say, well, don't avoid the whole agreement. Just sort of allow this money to come in, and then we get it, and what's your response to whether you can kind of partially avoid this? Because I think his standing depends on that. Correct. So what my friend wants to do is invalidate the agreements, make the money available, and assert the homestead exemption. However, the homestead exemption attaches to that which was available on the date of filing. What was recovered by the trustee was property of the mortgage lenders. Their liens were transferred to the trustee. The trustee acquired those liens and then sold the property. It was a one-two transaction, an escrow. The liens were paid from the proceeds of the sell. If we invalidate that, then we have to invalidate the transfer of the liens to the trustee. I don't see how there's any other way around it, that the agreement is provided specifically. So if we unwind the part of the agreement that which the debtors believe is illegal, which is the transfer of the liens, then they couldn't have actually provided any proceeds to the state. It has to go back to the lenders. The lenders revesting their liens, their lien into action again, and they would have a right to claim their liens against those proceeds. Additionally, even if the liens didn't spring back into effect, the security interest, which was in existence on the date of filing of these two junior lien holders, is still valid against the debtors, even if there is no recorded lien, and that's California law. So if you invalidate part of the agreement, which I don't see any cause to invalidate the part of the agreement, it should be either if the court's going to reverse, the court needs to reverse in toto, or the court needs to affirm. Otherwise, the debtors are cherry-picking those provisions in that agreement that favors them and asking the court to eliminate those provisions. But Mr. Reed says we have severability provisions, so he can rely on those. I don't know how the debtors can rely on those severability provisions. They're not even a part of the contract. Not to mention, there isn't any reason to sever the agreement. The debtors have yet to put forward a reason other than the claim that their homestead was interfered with or was impaired to invalidate the agreements. They have argued that it's illegal, the transfer of liens to the trustee, but there's nothing in the code that says it's illegal. In fact, the basis for the transfers were subordination assignment agreements that are authorized under the bankruptcy code. How could they be illegal, the provision of the transfer of these liens, if the code itself allows for it? That doesn't make any sense. And not to mention, even if it were illegal to invalidate portions of the agreement, it doesn't just mean that the homestead exemption comes back into play. Again, the money that came in came in from the liens that were property of another party. It wasn't property on the filing of the petition. And under 541, that's when the snapshot rule, that's when you look at what property can be exempted. There was no right that the debtor had to exempt any part of those liens. Those liens were consensual. That's also California law. A consensual lien, an exemption cannot come before it. And I don't know how the debtors could claim an interest in those liens because the debtor never had a right in those liens. Those were held and owned by third parties, by mortgage companies. So the debtor wants to take property of another and assert their homestead against that. And that just isn't in compliance with California law. Can I have you try to give me some clarity on the amount of money that is currently being held? I believe it's $225,852. And how that might be distributed, and in that respect, there is a number that's in the briefing, $45,962 that the debtors may receive. Do you have any idea how this is all going to play out? Assuming that you are affirmed in this case, what happens next? I want to get an understanding, if you can. Correct. So the court is correct. There was briefing at the bankruptcy level. It was the reply brief in relation to the sell motion and the 99T motion, which is the compromise motion. At that time, the trustee had estimated about $45,000 was going to be available to pay the homestead. In bankruptcy, we love this phrase called the melting ice cube. You know, everything seems to evaporate pretty quickly. And a property with liens that are accruing interest is no different. The property continued to accrue interest between the sell motion and the date of closure, so mortgage interest, also property taxes. The debtors were living in the property without paying mortgage payments or property taxes for about two years. So that ice cube was melting fast. The value didn't change once the deal was done to sell the property, and so what we had estimated at $45,000 deteriorated to nothing. It actually, on the two liens that the trustee received, the trustee wasn't paid in full on those liens. In fact, it was something less. And so there's nothing left to pay to the debtors on their homestead if we're just looking at the four consensual liens and the two statutory liens because what happened was the first was paid in full, the second and third. I'm sorry, the first and second were paid in full. The third and fourth were paid in part. Those are the trustee liens. The fifth lien was, I think, the IRS. Try it this way. Under the melting theory, who's left to get a piece of the ice? The trustee for his fees and costs? Anybody else? Correct. So under the distribution scheme under 726, it would be to administrative priority creditors, so the trustee, counsel to the trustee, any other professionals, and then general unsecured creditors after that. At this point, the trustee and professionals, because of the cost of all of this, including this appeal, will not be paid in full. They will have to waive some of their fees so that a distribution to unsecured creditors is made. And you're saying the debtors have lived in the home without cost during this time? They've had that, quote, benefit. They were there until before the sale closed, and then they vacated. And the sale closed when? Remind me. Roughly. It's been so long. One minute, Your Honor. November 19, 2021, they vacated, and the sale closed shortly after that. That's close enough. So what is the amount going to the general unsecured creditors here? I don't have that in front of me, Your Honor. It's significant. The debtors are going to be discharging a significant amount of money, and the distribution is not going to be ñ it's going to be something, but it won't be as high as we'd hoped when the sale was proposed and the sale closed. And that is because of the mortgage and the interest issues that you just raised? The increase in ñ so the interest that was charged on the mortgages, the property taxes, there was insurance that had to be paid to maintain the property, and then the accruing legal fees. The trustee's commission is statutory, so it won't change. It doesn't go up or down. It just is based on what the distributions are. But, yeah, so what ended up happening was that the amount that was going to be available, which was north of $200,000, and it was $225,000 at one point, it decreased. And the way the structure of 726 works is that there's going to be even less unsecured creditors based on what the cost of handling these appeals. So where is it now, under $200,000? The amount of money on hand with the trustee is still north of $200,000. It's just how the court and the bankruptcy court still has yet to decide how that gets distributed. What will happen is at the end of the bankruptcy case, the bankruptcy trustee will submit a final report. The final report will detail the money received and what is going to be distributed, and that distribution will follow 726, but for perhaps some administrative claims like professional fees being discounted to make something available for unsecured creditors. Again, the trustee had targeted a certain number north of $25,000 when the sale was going through, and what happened is the cost of everything since then has eroded. So bottom line, trustee, if there had not been this compromise and sale agreement, debtors would have gotten zero, right? And currently you're telling me they're going to get zero, right? Yeah, that's correct. The property was over-encumbered, and it was not just consensual liens and tax liens, but there was also a judgment lien that was well underwater when they filed. If they were outside of bankruptcy. What was the judgment lien for? $173,000, I believe. But what was the nature of the judgment? I don't recall what the lien was, but it was probably a lawsuit with a judgment lien. I really know that's simplistic, and I wish I had a better description. But when the debtors had filed at that point, if they tried to sell the property themselves, they would have gotten nothing. There was nothing for them. When they went into bankruptcy, they had a better chance of getting something because at least the homestead exemption came before the judgment lien and might have been paid. But as I explained earlier, the erosion of the cash on hand, the melting ice cube, ended up squashing what their homestead would have been paid from the sale, and now it's down to zero because of all the different reasons I explained before with the melting ice cube. Right, but are they not getting a fresh start out of this eventually? Oh, Your Honor, they will receive a discharge, and I believe they already have, if I'm not mistaken. So they have received the full benefit of the bargain, which when you enter into bankruptcy as a Chapter 7 debtor, especially Chapter 7, you are essentially risking your assets in exchange for the discharge. There's an injunction that prevents creditors from collecting from you post-discharge. So they have received the benefit of the bargain, if you will, and now what they want is they also want to recoup some of their homestead exemption, which is perfectly understandable. However, that homestead exemption, in all reality, was nothing from day one. It only possibly would have been something if the trustee sold the property at a certain point and the property closed with a certain value. So let's say the trustee sold it for $5 million, then their homestead would have been paid. And it's important to note there's a case called Enright Tillman that this Court decided recently, and in Tillman the Court noted that property that is claimed as exempt is removed from the estate however that's only when the homestead exemption is allowed. This homestead exemption was still open because the objection deadline had not passed. So that homestead, if there was one that the debtors had, never got removed from the estate. The entirety of the property was in the estate when it was sold. I didn't want to miss that point because that's a little bit different than what happened in Tillman. Looks like my time is up. Okay. Thank you, Mr. Goodrich. Mr. Reed, we'll hear from you. Thank you. Number one, the Bankruptcy Code does not authorize these transactions. There's nothing in the code that allows the trustee to engage in this sort of claims bargaining. The trustee can sell property. They can sell property free and clear of liens with the consent of the secure creditors. The trustee can avoid transfers and preserve them for the benefit of the estate. He can negotiate with creditors? He can negotiate with creditors, but there's nothing in the code that authorizes these types of lien assignments that are specifically intended to sidestep the distribution provisions of the Bankruptcy Code. On the issue of waiver, I looked back at the briefs. This issue about whether the settlement agreements had to be reversed in total or not was really raised by the BAP sui sponte during oral argument. In response to that, I'm referring to the severability provisions in the contract. My friend also discussed or argued that if they weren't administering property of the estate, they're administering property via debtor. These are the secure creditors' funds, and they can do what they want with them. I think that mischaracterizes the transaction. The buyers bought the property. The funds came because they were purchasing the property. The secure creditors agreed to a discounted payoff. So it's a mischaracterization of the transaction, but it also creates conflict of interest issues for the trustee because the trustee is not allowed to accept remuneration to influence his official duties. Also, if you're treating the funds as non-estate funds that the trustee acquires, the trustee is also not authorized to administer non-estate property. The trustee is only authorized to sell property of the estate. So that whole characterization is flawed. The principal beneficiaries of this whole transaction are the trustee and his professionals. The lion's share of the funds are going to the trustee and his attorneys, and they pay a pittance to general and secure creditors, maybe 1% or 2% of their pro rata claims, and the only ones holding the bag are the debtors who've been forcibly evicted sooner than they otherwise would have from their home. And then as far as the benefit… Sooner than they otherwise would have because the foreclosure would have taken longer? Is that what you're saying? Yes, right. It would have taken longer. The debtor would have had an opportunity to, you know, address remedies. They could have tried to negotiate a loan modification with the secure creditor. They could have tried to refi or short sell the property themselves. I mean, they were really denied an opportunity. And regarding the benefit of the bankruptcy, the debtors did receive a discharge, but part of it also is that they can at least retain the minimum amount of property that is necessary to survive, and that was denied them in this case. Okay. Thank you, Mr. Reed. Thank you. We'll thank both counsel for the briefing and arguments this morning. This matter is submitted. That concludes our cases for the morning, and we'll stand in recess. All rise. This court for this session stands adjourned.
judges: RAWLINSON, BRESS, Zouhary